IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **CENTURY SURETY COMPANY,** as subrogee of Triangle Engineering, L.P., <br><br>　　　　　　　　Plaintiffs, <br><br>v. <br><br>**COLGATE OPERATING, LLC,** <br><br>　　　　　　　　Defendants. | § § § § § § § § § § § <br><br>CIV. ACTION NO. 1:22-cv-00-002385-RP |

### FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, Century Surety Company as subrogee of Triangle Engineering, L.P., and files this First Amended Complaint for Breach of Contract against Defendant, Colgate Operating, LLC, and would show the Court the following:

## I.
## PARTIES

1.　　Triangle Engineering, LLC ("Triangle") is an Oklahoma limited liability company with its principal place of business in Oklahoma. Upon information and belief, all of Triangle's members including the managing member, Bryson Davis, are citizens of the State of Oklahoma. Triangle is a nominal Plaintiff in this matter as subrogor. Triangle is not seeking to recover damages on its own behalf and is not a real party in interest in this case.

2.　　Century Surety Company ("Century") is a corporation domiciled in Ohio, with its principal place of business in Michigan. Pursuant to the Century excess policy, Century has paid for certain damages incurred by Triangle as a result of the Underlying Lawsuit. As a matter of law and equity, Century is: (a) qualified to bring and participate in this case in the name of its

insured to recover the sums paid on the insured's behalf; (b) subrogated to any right of recovery or cause of action that the insured has for such damages; and (c) asserting its interests in this action in the Plaintiff's name. Triangle also agreed to assign its rights against Colgate to Century. Century is a real party at interest in this matter as a subrogated insurer.

3.  Defendant, Colgate Operating, LLC ("Colgate") is a Delaware limited liability company with its principal place of business in Midland, Texas. Diversity of citizenship for purposes of limited liability companies is determined by the citizenship of their members. Colgate has one member: Colgate Energy Partners III, LLC, which is also a Delaware limited liability company. Colgate Energy Partners III, LLC has one managing member: CEP III Holdings, LLC, which is also a Delaware limited liability company. CEP III Holdings, LLC has seven members: William M Hinkey III, James H Walter, William J. Quinn, A. Chris Aulds, Stewart Coleman, David Levinson and Craig S. Glick. All are citizens of the State of Texas. Colgate has been served and is preparing to file an Answer.

## II.
## JURISDICTION AND VENUE

4.  The jurisdiction of this Court exists under 28 U.S.C. §1332 of the Federal Rules of Civil Procedure based upon the diversity of citizenship of Plaintiff and Defendant, and the amount in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

5.  Venue is properly maintained in this Court because it is the judicial district where a substantial part of the events and omissions giving rise to the claims occurred and in which the underlying state court lawsuit that is the basis of this suit is pending.

## III.
## MASTER SERVICE AGREEMENT

6.  As part of Triangle's work at a well site, Triangle and Colgate entered a Master Service/Sales Agreement ("MSA") on April 29, 2017. In the MSA, Colgate was defined as

"Company" and Triangle was defined as "Contractor." The MSA contained the following relevant indemnity provisions:

> 13) <u>Indemnities.</u>
>
> (a)  In the event maritime law <u>is not applicable</u> to a transaction governed hereby, and in the further event the provisions of the Texas anti-indemnity statute (Tex. Civ. Prac. & Rem. Code Ann. §127.001 et seq.) or the New Mexico anti-indemnity statute (N.M. Stat. Ann. §56-7-I et seq.) <u>arc applicable</u> to a particular transaction, the following mutual indemnity provisions wilt govern that transaction:
>
> . . .
> (ii) COMPANY AGREES TO AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR, CONTRACTOR'S CONTRACTORS AND SUBCONTRACTORS, AND CONTRACTOR'S DIRECTORS, OFFICERS, OWNERS. EMPLOYEES, AGENTS, PARENT, AFFILIATES AND SUBSIDIARIES, DIRECT AND REMOTE (hereinafter the "CONTRACTOR GROUP") FROM AND AGAINST ALL CLAIMS, DEMANDS, CAUSES OF ACTION AND LIABILITY OF EVERY KIND AND CHARACTER (INCLUDING ALL EXPENSES OF LITIGATION, COURT COSTS, AND ATTORNEYS' FEES), THAT MAY BE MADE OR ASSERTED BY COMPANY, COMPANY'S CONTRACTOR'S AND SUBCONTRACTORS, OR COMPANY'S DIRECTORS, OFFICERS EMPLOYEES OR AGENTS, ARISING OUT OF, RESULTING FROM OR IN ANY WAY INCIDENTAL TO, DIRECTLY OR INDIRECTLY, TRANSACTIONS SUBJECT TO THIS AGREEMENT (<u>INCLUDING BUT NOT LIMITED TO THOSE ACTUALLY OR ALLEGEDLY CAUSED BY THE FAULT OR STRICT LIABILITY OF THE CONTRACTOR GROUP, THE UNWORTHINESS OF ANY VESSEL, CRAFT OR PLATFORM, OR THE SOLE OR CONCURRENT NEGLIGENCE OF ONE OR MORE MEMBERS OF THE CONTRACTOR GROUP</u>). This indemnification obligation shall be supported by insurance to be provided by Company with policy limits equal to the lesser of (1) the limits of liability prescribed for Comprehensive General Liability insurance in part (B) of Exhibit (A) attached hereto, or (2) the maximum amount which may be required by law, if any, without rendering this mutual indemnification obligation void, unenforceable or otherwise inoperative. The insurance provided in support of these indemnity obligations shall, however, in no way limit Company's indemnity obligations hereunder save and except to the extent necessary, if any, to prevent said indemnification obligations from being declared void, unenforceable or otherwise inoperative.
>
> 7.  Exhibit (A) of the MSA also states in relevant part:
>
> To protect Colgate Operating, LLC against liability, loss, or expense from damage to property or injury to any person arising out of, in connection with or resulting from the work provided for hereunder, Contractor shall, during the progress of the

work, carry at its own expense on forms and in reliable insurance companies authorized to do business in the state or area in which the work is to be performed hereunder, the following minimum coverages:

. . .

B. Comprehensive General Liability Insurance, with limits of liability of not less than the following:

$5,000,000 general aggregate
$5,000,000 each occurrence, Bodily Injury and/or Property Damage Combined Single Limit

Such insurance shall include the following:
1. Premises and Operations coverage
2. Contractual Liability covering the liabilities assumed under this agreement.
3. Broad Form Property Damage Liability endorsement.
4. Products and Completed Operations.
. . .

F. Excess Liability Insurance, Drilling Contractors only, with limits of liability of not less than the following:

Limits of Liability - $25,000,000 Occurrence/Aggregate of Bodily Injury and Property Damage in excess of the coverage outlined in Paragraphs "A", "B", and "C".

## IV.
## INSURANCE TO SUPPORT THE MSA INDEMNITY OBLIGATIONS

8. Markel issued to Colgate Energy, LLC, a commercial general liability insurance policy for the period between September 1, 2019 to September 1, 2020, bearing policy numbers JCGL101844 and policy limits of $1,000,000 per occurrence/$1,000,000 personal and advertising injury/$2,000,000 products-completed operations aggregate limit/$2,000,000 general aggregate ("the Markel primary policy"). The Markel primary policy contains a Named Insured Schedule that includes "Colgate Operating, LLC" as a named insured.

9. Markel issued an excess policy to Colgate Energy, LLC, bearing policy number JUMB101585, with $75,000,000 per occurrence and $75,000,000 aggregate limits ("the Markel

excess policy") during the same policy period as the Markel primary policy. Colgate Operating, LLC is an insured under the Markel excess policy.

10. Hallmark National Insurance Company ("Hallmark") issued to Triangle a commercial general liability insurance policy for the period between October 5, 2019 to October 5, 2020, bearing policy numbers E35800087-1 and policy limits of $1,000,000 per occurrence/$1,000,000 personal and advertising injury/$2,000,000 products-completed operations aggregate limit/$2,000,000 general aggregate ("the Hallmark primary policy").

11. Century issued to Triangle a Commercial Excess Liability Coverage Policy with the same policy period as the Hallmark policy, bearing policy number CCP863550 and policy limits of $5,000,000 per occurrence and $5,000,000 aggregate ("the Century excess policy"). The Century excess policy provided excess coverage above the $1,000,000 policy limits provided by the Hallmark primary policy.

## V.
## UNDERLYING LAWSUIT

12. The instant breach of contract case arises out of an injury to an employee for a Colgate vendor at a well site. Jeromy Miller was performing work for Black Star Energy Services ("Black Star") delivering pipe racks to Colgate. Triangle, named insured for Century, was acting as "well site supervisor (consultant)" through its contract with Defendant Colgate. Triangle's independent contractor, Brian Bell, was assisting Mr. Miller in unloading pipe racks when the pipe racks fell from a flatbed trailer and severely injured Mr. Miller.

13. Mr. Miller and his wife Anai Miller ("the underlying plaintiffs") filed their Original Petition against numerous parties in a case styled as: *Jeromy Miller and Anai Miller v. Colgate Energy, LLC, Colgate Energy GP, LLC Colgate Energy Partners, LLC*, *Colgate Energy Partners II, LLC, Colgate Energy Partners III, LLC, Colgate Operating, LLC, Triangle*

*Engineering, LLC, Brian Bell, Longstring Pipe & Supply, and Rudy Montoya* Cause No. 20-04-23492-CVR, in the 143rd Judicial District Court of Reeves County, Texas ("the Underlying Lawsuit"). In addition to Triangle, Bell, and Colgate entities, the lawsuit included other parties that were involved in the loading or unloading of the pipe racks. The underlying plaintiffs alleged negligence against each underlying defendant as well as negligent activity against the Colgate entities.

14. The underlying plaintiffs sought damages for (a) physical pain in the past and future, (b) mental anguish in the past and future, (c) scarring and disfigurement, (d) physical impairment, (e) medical expenses, (f) lost wages, (g) lost earning capacity, (h) loss of consortium, (i) loss of household services and (j) any other recoverable costs.

## VI.
## TRIANGLE IS ENTITLED TO CONTRACTUAL INDEMNITY FROM COLGATE UNDER THE MSA FOR THE MILLER SETTLEMENT

15. The underlying plaintiffs claimed damages close to $100,000,000 in the Underlying Lawsuit. Colgate originally took the position that Colgate's indemnity obligation owed to Triangle was limited to $5,000,000 under the MSA. Colgate subsequently took the position that its indemnity obligation owed to Triangle was limited to $6,000,000.

16. On or about April 22, 2022, the underlying plaintiffs settled the Underlying Lawsuit for a confidential amount. With respect to Triangle, Colgate only offered $6,000,000 to settle on Triangle's behalf. In order to effectuate settlement and protect their mutual insured, Hallmark agreed to pay its $1,000,000 primary policy limits and Century paid its full $5,000,000 excess policy limits to resolve the claims against Triangle in the Underlying Lawsuit.

17. Triangle and Colgate entered into the valid MSA quoted above. The MSA between Colgate and Triangle required that Colgate indemnify and hold harmless Triangle from

and against all claims that may be made by Colgate's contractors, subcontractors, and agents against Triangle. Mr. Miller was an employee of Black Star, a Colgate contractor, subcontractor, or agent. As such, Colgate has a contractual obligation under the MSA to indemnify Triangle for amounts paid to resolve Triangle's liability in the Underlying Lawsuit.

18.     Colgate obtained $76,000,000 in insurance coverage with the Markel primary and excess policies. In light of the MSA indemnity and insurance provisions as well as the Markel policies' language, the MSA indemnity provision provides up to $76,000,000 in indemnity to Triangle under applicable law, including Texas Civil Practice and Remedies Code § 127.005(b) and the Fifth Circuit's recent opinion in *Cimarex Energy Co. v. CP Well Testing*, L.L.C., 26 F.4th 683 (5th Cir. 2022).

## VII.
## COUNT

### A.     **Count I –Breach of Contract**

19.     Century alleges and incorporates by reference the allegations found in paragraphs 1 to 18 above.

20.     Century asserts a breach of contract cause of action against Colgate based upon Colgate's failure to contractually indemnify Triangle for the $5,000,000 paid by Century to settle the Underlying Lawsuit.

21.     While Triangle met all conditions and performed its obligations under the MSA, Colgate breached its obligation to fully indemnify Triangle under the MSA. Specifically, Colgate agreed to pay only $6,000,000 on behalf of Triangle, and Colgate maintains that it owes a maximum indemnity of $6,000,000 under the MSA.

22. Triangle and Century were damaged by Colgate's breach. Specifically, Triangle's own carriers, including Century, paid their policy limits to settle the claims against Triangle after Colgate agreed to contribute only $6,000,000.

23. Century is subrogated to Triangle's rights due to Century's payment of $5,000,000. Triangle also agreed to assign its rights against Colgate to Century.

24. Century and Triangle have further incurred damages in the way of attorneys' fees as a result of Colgate's breach.

## VIII.
## ATTORNEYS' FEES

25. Century engaged the undersigned attorneys to prosecute this lawsuit against Colgate and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal. Century is entitled to reasonable and necessary attorneys' fees pursuant to the contract between Triangle and Colgate and under § 38.001 of the Texas Civil Practice & Remedies Code, as well as all other applicable laws.

## IX.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Century Surety Company, pray for judgment as follows:

   A.   Amounts paid by Century on behalf of Triangle to settle the Underlying Lawsuit as a result of Colgate's breach ($5,000,000);

   B.   Reasonable and necessary attorneys' fees and costs; and

   C.   All other and further relief, legal or equitable, general or specific, to which Century may show itself to be justly entitled.

      Respectfully Submitted,

By: */s/ Robert J. Witmeyer*
    **ROBERT J. WITMEYER**
    State Bar No. 24091174
    Email:  Rob.Witmeyer@cooperscully.com

**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone:  (214) 712-9500
Telecopy:   (214) 712-9540

**ATTORNEYS FOR PLAINTIFF,
CENTURY SURETY COMPANY**

## CERTIFICATE OF SERVICE

Pursuant to W.D. Tex. Loc. R. 5.1(a) and Fed. R. Civ. P. 5(b)(2)(E), the undersigned counsel hereby certifies that on this the 25th day of April, 2022, the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to opposing counsel of record.

      */s/ Robert J. Witmeyer*
      **ROBERT J. WITMEYER**

D/1046892v3